UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JONATHAN W. ASSAF                                            CIVIL ACTION

VERSUS                                                       NO. 10-1063

ALLSTATE INDEMNITY COMPANY,                                  SECTION "N" (1)
ET AL.

## ORDER AND REASONS

Before this Court is Allstate Indemnity Company's Motion for Summary Judgment (Rec. Doc. 43). Plaintiff, Jonathan W. Assaf, opposes this motion. (See Rec. Doc. 50). Allstate Indemnity Company ("Allstate") and Plaintiff have each submitted reply memoranda. (See Rec. Docs. 54 and 57). After considering the memoranda of the parties and the applicable law, the Court rules as set forth herein.

## I.     FACTS AND PROCEDURAL HISTORY

Plaintiff is the owner of certain property located at 5527 Rosemary Place, New Orleans, Louisiana. Allstate was Plaintiff's homeowners insurance provider. In the late night/early morning hours of February 21/22, 2009, Plaintiff incurred property loss as a result of a home burglary.

1

Plaintiff claims to have picked up a stranger (allegedly named, "Raymond") on the evening of Saturday, February 21, 2009, during the Mardi Gras season, after the Endymion parade. (Exhibit A to Rec. Doc. 50, pp. 28-33, 37, 43-44).  Plaintiff allegedly brought the stranger back to his Lakeview home and allowed him to remain there for a several hours waiting on a friend to pick him up. At some point around either 11:30 p.m. or 12:15 a.m. that night, Plaintiff left his home to go out with friends, leaving the stranger on his front porch. (*Id.* at pp. 37 and 43-44).When Plaintiff returned home an hour later, in the early morning hours of February 22, 2009, he discovered that he had been robbed. (*Id.* at pp. 49, 55).

Plaintiff's property loss estimates have varied.  In Plaintiff's initial report to the New Orleans Police Department on February 23, 2009, he claimed that approximately $16,000 of his personal property was stolen. (Exhibit G-3 to Rec. Doc. 43). Plaintiff first reported the loss to Allstate by telephone on February 26, 2009, claiming then that $53,800 worth of his personal property was stolen, including expensive musical equipment, jewelry and a Cartier watch, bicycles, and televisions. (Exhibit C to Rec. Doc. 43, Bates No. 000003).

The next day, Allstate assigned adjuster Meredith "Lacey" Bain ("Bain") to the claim. She called Plaintiff and obtained his recorded statement regarding the loss.  Plaintiff told Bain that on the night of the burglary, he saw a strange man in his neighborhood who asked if he could wait at Plaintiff's house for a ride. After taking Plaintiff's recorded statement, Bain faxed Plaintiff blank inventory loss forms and requested that he complete and return the forms to Allstate. (Exhibit B to Rec. Doc. 43, pp. 5-7, 118-120; Exhibits D and D-2 to Rec. Doc. 43).

The following day, Allstate adjuster Richard Laraway ("Laraway") inspected Plaintiff's home and spoke to Plaintiff. Plaintiff told Laraway that he picked up a stranger who was walking by himself after a parade and was going to bring him to the gas station but brought the stranger to his home instead, while Plaintiff changed clothes to go to a party. Laraway's inspection confirmed minor structural damage to the residence, and Allstate paid Plaintiff for the dwelling portion of the claim. (Exhibit B to Rec. Doc. 43, pp. 191, 203; Exhibit E to Rec. Doc. 43, Exhibit F to Rec. Doc. 43, bates nos. 141-142; 145-146).

On that same day, Plaintiff faxed Allstate his unsworn inventory of the items allegedly stolen, this time totaling in excess of $90,000. (Exhibit D-3 to Rec. Doc. 43). In this particular inventory, Plaintiff claimed new items not initially reported, including a Rolex watch, a diamond broach, a third television, a second amplifier, and another set of speakers. The only "proofs of loss" Plaintiff provided Allstate were copies of two Phillips television owner manual covers, a copy of a picture of a person playing drums and cymbals, and later, copies of a band poster, a sunglass case, and a receipt for drums. (Exhibit B to Rec. Doc. 43, pp. 121, 128; Exhibit D to Rec. Doc. 43).

Plaintiff's contents claim was thereafter referred to Allstate's Special Investigations Unit ("SIU") due to what Allstate deemed to be suspicious circumstances, including the addition of multiple items to the claim after the initial report without reasonable explanation, damage that Allstate considered to be inconsistent with the loss, and the necessity for more than one person or truck to move the volume of items claimed (in less than one hour when the burglary is alleged to have occurred). (Exhibit F to Rec. Doc. 43, Bates No. 145). Allstate assigned Plaintiff's claim to SIU adjuster James Rusher ("Rusher"). On March 24, 2009, Rusher attempted to call Plaintiff

without success and Rusher also sent Plaintiff a letter via Federal Express instructing him to complete and return an enclosed Sworn Statement in Proof of Loss form and supporting documentation. However, Plaintiff did not respond to either Rusher's phone call or letter. (Exhibit F to Rec. Doc. 43, Bates Nos. 140, 144; Exhibit G to Rec. Doc. 43).

Plaintiff, on the other hand, claims that Allstate made no contact with him for over one month (Exhibit B to Rec. Doc. 50, pp. 8-17) until on or about April 1, 2009 when Plaintiff, by chance, ran into Glenn Gay ("Gay"), a private investigator hired by Allstate, at his house. (*Id*. at p. 8; Exhibit G-2 to Rec. Doc. 43).  Specifically, Plaintiff claims to have no recollection of having received the March 24, 2009 letter from Rusher, or having seen the sworn proof of loss form, which was supposedly attached thereto. (Exhibit A to Rec. Doc. 50, pp. 133-135).  During Plaintiff's conversation with Gay, Plaintiff again said that the suspected burglar was a stranger wandering the streets of Plaintiff's neighborhood that he allowed into his home. (Exhibit B to Rec. Doc. 43, p. 190; Exhibit G to Rec. Doc. 43).  Notably, the police report fails to reference any stranger and, further, "no" is checked in response to two questions: (1) "Do you suspect anyone in this theft/burglary?" and (2) "Did you give anyone permission to use or enter your house/business?" (Exhibit G-3, Bates No. 64).

The investigator and Plaintiff agreed to meet at Plaintiff's residence on April 22, 2009 so that Plaintiff could provide proof of ownership records and a witness. Plaintiff failed to appear for the meeting, and Plaintiff did not answer the investigator's calls that day. Rusher sent Plaintiff a second letter on April 28, 2009 via certified mail, again requesting that he submit the sworn loss forms.  (Exhibit G-5 to Rec. Doc. 43).  Plaintiff also claims to have never received the letter Sworn Proof of Loss form, which was allegedly attached thereto. (Exhibit A to Rec.

4

Doc. 50, pp. 133-135).  On April 30, 2009, Rusher contacted Plaintiff by telephone and Plaintiff agreed to complete and return the sworn proof of loss forms to Allstate. Despite his indication, Plaintiff never submitted the sworn proof of loss forms to Allstate to substantiate his claim. (Exhibit B to Rec. Doc. 43, p. 193; Exhibit F to Rec. Doc. 43, Bates Nos. 134-136; Ex. G to Rec. Doc. 43).

Rusher was replaced by Wendy Fox ("Fox") as Allstate's SIU adjuster. On May 22, 2009, Fox mailed Plaintiff a third letter. She also attempted to call Plaintiff without success on May 22, 2009, June 3, 2009, June 9, 2009, and June 22, 2009. When Fox finally contacted Plaintiff on June 23, 2009, he agreed to submit to an examination under oath ("E.U.O."). (Exhibit B to Rec. Doc. 43, pp. 193-196; Exhibit F to Rec. Doc. 43, Bates Nos. 131-132; Exhibit I to Rec. Doc. 43).

In response to an August 19, 2011 letter of representation from Plaintiff's counsel's office, Allstate contacted Plaintiff's counsel on August 27, 2009. (Exhibit B to Rec. Doc. 50, pp. 1-2; Exhibit F to rec. Doc. 43, Bates Nos. 130-131).  After Allstate and Plaintiff both retained counsel, Allstate's attorney, Lucy Hawks ("Hawks") mailed a letter to Plaintiff's counsel on September 1, 2009 to schedule Plaintiff's E.U.O. Hawks received no response. (Exhibit I to Rec. Doc. 43).  Another Allstate attorney, Janet Colaneri ("Colaneri"), sent letters to Plaintiff's counsel on September 22, 2009, October 5, 2009 and October 15, 2009 to schedule Plaintiff's E.U.O. (Exhibits J, J-1, J-2, and J-3 to Rec. Doc. 43). On October 21, 2009, Colaneri spoke with Plaintiff's counsel, explaining that the E.U.O. was required under the Policy. (Exhibits J and J-4 to Rec. Doc. 43).  However, in an October 29, 2009 letter, Plaintiff's counsel expressly refused to allow Plaintiff to give an E.U.O. (Exhibits J and J-5 to Rec. Doc. 43).  Colaneri persisted in

5

her efforts to schedule an E.U.O. by correspondence to Plaintiff's counsel dated November 5, 2009, and December 8, 2009, which were again refused by Plaintiff's counsel. (Exhibits J and J-6, J-7, J-8, J-9).

On February 25, 2010, Plaintiff filed this lawsuit against Allstate in state court and Allstate removed the action. (Rec. Doc. 1). Allstate has filed the instant motion, arguing that dismissal is appropriate based on Plaintiff's refusal to submit to an E.U.O and to provide Allstate with a sworn proof of loss, despite Allstate's repeated requests for such information. Allstate argues that Plaintiff has breached his duties under the policy by failing to cooperate and intentionally impeding Allstate's investigation of the claim, in violation of his post-loss duties under the Policy.

## II.　LAW AND ANALYSIS

### A.　Legal standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that

the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." See *id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence

exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

    **B.**    **The Parties' Arguments**

Allstate notes that Plaintiff has neither provided a sworn proof of loss nor submitted to an E.U.O., which are conditions precedents to recovery. Thus, Allstate argues that Plaintiff's failure to provide a sworn proof of loss and refusal to submit to an E.U.O. are both breaches of the Policy, which require dismissal of this suit.

First, with regard to the sworn proof of loss, Allstate cites *Gustings v. Travelers and Standard Fire Insurance Co.*, No. 07-4443, 2008 WL 4948837 (E.D. La. Nov. 18, 2008), for the proposition that an insured's failure to provide a sworn proof of loss as required by the policy terms requires dismissal of the claim with prejudice. Here, Allstate attempted to obtain Plaintiff's sworn proof of loss on multiple occasions after Plaintiff reported the loss. Allstate mailed Plaintiff two letters requesting that he complete and return the proof of loss forms. Although

Plaintiff now denies that he received the letters, Allstate sent the letters to Plaintiff's correct mailing address and they were not returned as undeliverable. Plaintiff also failed to appear for a scheduled meeting at which he was to provide a sworn proof of loss and proof of ownership to Allstate's private investigator.

Second, with regard to the E.U.O., Allstate cites *Mosadegh v. State Farm Fire and Casualty Company*, 2008 WL 4544361 (E.D. La. Oct. 8, 2008), *aff'd*, 2009 WL 1362830 (5th Cir. 2009), wherein summary judgment was granted dismissing the insureds' claim based on their refusal to submit to E.U.O.'s. Here, Allstate claims that it was faced with inconsistent and incomplete information from Plaintiff regarding the nature and extent of his losses, without any reasonable explanation. Allstate merely attempted to exercise its rights under the Policy to investigate the claim by requiring Plaintiff to submit to an E.U.O.

In response to these assertions, Plaintiff first argues that, prior to the alleged acts of non-cooperation, Allstate failed to timely adjust his homeowners insurance claim in good faith. Plaintiff contends that Allstate breached of its duties under the Policy, and the law relieved him of his obligations under the policy/contract. Alternatively, Plaintiff contends that there are genuine issues of material fact existing as to whether he failed to fulfill his duty to cooperate with Allstate's adjustment/investigation of his claim.

Specifically, Plaintiff asserts that he had no opportunity to submit a Sworn Proof of Loss form within sixty days of the loss (i.e., by April 23, 2009) as he never received any such form. (Exhibit A to Rec. Doc. 50, pp.134-136). Plaintiffs asserts that no copies of these blank forms are included in Allstate's claim file, despite the indication that they were enclosed with Allstate's March 24, 2009, and April 28, 2009 letters to Plaintiff. (Exhibits G-1 and G-2 to Rec. Doc. 43).

9

Further, Plaintiff notes that he agreed to submit to an E.U.O. and that Allstate simply failed to conduct one. Plaintiff states that he was not asked to do so until June 23, 2009; and he agreed when asked. (Exhibit A to Rec. Doc. 50, pp. 193-195; Exhibit B to Rec. Doc. 50, p. 2). Thereafter, Allstate made no attempt to contact Plaintiff for more than two months, and finally did so only on August 27, 2009. (Exhibit B to Rec. Doc. 50, p. 1-2). Plaintiff argues that Allstate cannot obtain permission to conduct an E.U.O., fail to follow-up for more than two months, then turn around and assert that Plaintiff's claim should be denied for his failure to submit to the E.U.O. Plaintiffs asserts that such behavior is arbitrary, capricious or without probable cause, and is a breach of Allstate's affirmative duty to adjust claims fairly and promptly.

**C.    Analysis**

Although theft of personal property is a covered peril under the Policy, in the event of a loss the Policy requires:

> **What You Must Do After A Loss**
>
> In the event of a loss to any property that may be covered by this policy, **you** must:
>
> …
>
> f) as often as we reasonably require:
> …
>
>> 2) at **our** request submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of same.
>
> …
>
> g) within 60 days after the loss, give **us** a signed, sworn proof of the loss…

(Exhibit K to Rec. Doc. 43, Bates No. 233, emphasis in original).  Further, the Policy provides, "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all requirements of this policy shall have been complied with. . ." (Exhibit K to Rec. Doc. 43, Bates No. 251).

Indeed, compliance with insurance policy provisions is a condition precedent to recovery under the particular policy, which must be fulfilled before an insured may proceed with a lawsuit. *Lee v. United Fire & Casualty Co.*, 607 So.2d 685, 688 (La.Ct.App.1992). Further, "the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to suit on the policy." *Id.* As noted in *Mosadegh*, "[s]uch failure may be the result of the misplaced arrogance of counsel, or the recalcitrance of the litigant." 2008 WL 4544361.  It may be "manifested by a refusal to submit to an examination under oath or a refusal to produce documents." *Lee*, 607 So.2d at 688 (citations omitted). "An outright refusal to submit to an examination is the easy case." *Id.* However, "[w]hen an insurer denies liability for a claim, it abandons its right to compel the claimant to comply with the preliminary provisions of the policy." *Patterson v. Liberty Lloyds Ins. Co.*, 96-2168 (La.App. 4 Cir. 3/26/97), 692 So.2d 17, 19.

Regarding Plaintiff's alleged non-cooperation, the Court addresses Plaintiff's position that he was relieved of fulfilling his obligations under the Policy because Allstate *first* failed to timely adjust his homeowners insurance claim in good faith.  To be clear, this Court finds Plaintiff's "what came first: the chicken or the egg?" argument to be completely without merit. On the showing made, it is clear that Allstate had appropriate and good reason to want to investigate this claim further based on what it reasonably considered to be "suspicious

circumstances", including but not limited to the aforementioned conflicting/inconsistent information provided by Plaintiff and the addition of multiple valuable items to the claim after the initial report, without explanation. Thus, Plaintiff's argument that his breach of the policy is of no moment because Allstate breached the Policy first is not persuasive. Further, as Allstate points out, it is only when an insurer denies coverage that an insured's duty to cooperate is eliminated. *Copelin v. State Farm, Ins.*, 2009 WL 361088, \*5 (E.D. La. Feb. 12, 2009). The evidence presently before the Court reveals that Allstate never denied coverage; no evidence has been presented to the Court to suggest otherwise. So, Plaintiff was still obligated to abide by the terms of the Policy, requiring a sworn Proof of Loss and an E.U.O, if and when requested.

Further, regarding the Sworn Proof of Loss, it is undisputed that Plaintiff never submitted one. While Plaintiff claims he submitted various inventories and accounts of the losses, they were just that: varied - and far from "satisfactory". Plaintiff's ever-changing inventory and estimates of losses made it truly necessary for Plaintiff to submit (and for Allstate to reasonably demand under the terms of the Policy) a *sworn* account - even more so than in a ordinary case wherein suspicious circumstances are not present. As this Court ruled in *Gustings*, an insured's failure to provide a sworn proof of loss as required by the policy terms requires dismissal of the claim with prejudice. 2008 WL 4948837.

Despite Plaintiff's testimony that he did not recall missing the meeting wherein he was supposed to provide a Sworn Proof of Loss, his failure to appear is well documented in Allstate's records. (Exhibit B to Rec. Doc. 43, pp. 133-137, 191-192; Exhibit F to Rec. Doc. 43, Bates No. 134-136; Exhibit G to Rec. Doc. 43). It is also well-documented that Allstate attempted to obtain Plaintiff's sworn proof of loss on multiple occasions after Plaintiff first reported the loss. Indeed,

Allstate mailed Plaintiff two letters requesting that he complete and return the proof of loss forms. Although Plaintiff now denies that he received the letters or the Sworn Proof of Loss forms supposedly attached thereto, Allstate sent the letters to Plaintiff's correct mailing address and they not returned as undeliverable. One such letter was even sent via Certified Mail. (Exhibit G-5 to Rec. Doc. 43). As Allstate points out, proof of mailing of documents establishes a presumption of receipt; proof of actual delivery is not required. *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007). Plaintiff's own self-serving testimony that he did not receive these letters and/or the proof of loss forms attached thereto does not rebut this presumption. Again, these letters were undeniably sent to Plaintiff's correct mailing address and were not returned as undeliverable. Plaintiff's failure to timely provide Allstate with a sworn proof of loss (undisputably required by the Policy) within sixty (60) days of the loss is a clear breach of the Policy terms, requiring dismissal of his claim.

Regarding Plaintiff's failure to submit to an E.U.O, the fact that at one point, Plaintiff agreed to sit for an E.U.O is of no moment, because he ultimately refused when called upon to do so. As Allstate points out, the Policy does not require Allstate to demand and schedule the E.U.O. within a specific period of time. It only requires that Plaintiff submit to an E.U.O. as often as Allstate reasonably requires. It is undisputed that Plaintiff ultimately refused to submit to an E.U.O, in clear violation of the terms of the Policy. This, in and of itself, requires dismissal of this suit.

Further, the Court determines that Allstate has shown that it has been prejudiced by the failure of Plaintiff to submit to an E.U.O. *Trosclaire v. CNA Ins. Co.*, 93-1741 (La.App. 4 Cir. 5/17/94), 637 So.2d 1168, 1170. "The burden is on the insurer to show actual prejudice." *Id.* Here,

Allstate asserts that it was prejudiced by Plaintiff's breach of the Policy's cooperation clause because it could not investigate the claim while the facts were still fresh. Allstate provides three specific examples of prejudice that it has experienced:

(1) Allstate complains that it was not until Plaintiff's recent deposition that he told Allstate the laptop computer, software, and computer bag he values at over $10,000.00 actually belonged to Leanne Walert ("Walert"), who was temporarily staying at Plaintiff's residence when the burglary occurred. During the deposition, Allstate learned that Plaintiff has not communicated with Walert since shortly after the burglary, and he no longer knows how to contact her. (Exhibit B to rec. Doc. 43, pp. 42, 85, 89, 125-127, 155-156, 207).

(2) Allstate next complains that it learned for the first time during Plaintiff's deposition that two of his friends saw and spoke to the man Plaintiff suspects was the burglar. Although Plaintiff provided Allstate with the names of these friends, he was unable to provide any contact information.

(3) During Plaintiff's recent testimony regarding the jewelry and watches he allegedly inherited from his aunt, he informed Allstate for the first time that her husband (Plaintiff's uncle) was alive at the time of the alleged burglary, but he died in 2010. (Exhibit B to Rec. Doc. 43, pp. 38-45, 113-116, 143-144, 168). Thus, Allstate asserts that if Plaintiff had timely complied with Allstate's request for an E.U.O. during 2009, Allstate could have obtained more information regarding the inherited jewelry and watches from Plaintiff's uncle.

Based on these specific examples, the Court agrees with Allstate that Plaintiff's refusal to submit to an E.U.O. deprived Allstate of the opportunity to contact these crucial witnesses in a timely fashion after the alleged loss. Indeed, Allstate has shown that Plaintiff's actions prohibited it from obtaining certain material information while it is still fresh. "[C]ooperation clauses fulfill the

reasonable purpose of 'enabling the insurer to obtain relevant information concerning the loss while the information is fresh.' " *Holden v. Connex-Metalna Mgmt. Consulting*, 97-3326, p. 2 (E.D.La.11/2/00) 2007 WL 1741839, *2 (quoting 14 Couch on Insurance § 199:4).

Because this Court determines that dismissal based on Plaintiff's failure to cooperate is appropriate, it does not reach the arguments relating to bad faith and the applicable policy limits.

### III.  CONCLUSION

Considering the foregoing, **IT IS ORDERED** that Allstate Indemnity Company's Motion for Summary Judgment (Rec. Doc. 43) is **GRANTED**. Thus, Plaintiff's lawsuit is dismissed with prejudice, at Plaintiff's costs.

New Orleans, Louisiana, this 27th day of July 2011.

_____
KURT D. ENGELHARDT
United States District Judge